UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM M. CALDWELL, JR.,

        Plaintiff,

                v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.

_____/

Civil Action No. 15-14358
Honorable Laurie J. Michelson
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NO. 14, 17]

Plaintiff William Caldwell appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying his applications for disability insurance benefits (DIB) and Supplemental Security Income Benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 17] be **GRANTED**;

- Caldwell's motion [ECF No. 14] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Caldwell's Background and Disability Applications

Born July 17, 1967, Caldwell was 43 years old when he submitted his disability applications on June 15, 2011.  [ECF No. 10-5, Tr. 207].  He had past relevant work as a pulper, lead person, garbage collector/driver, and truss assembler.  [ECF No. 10-2, Tr. 20-21].  Caldwell alleged disability from chronic back and neck pain, depression, nerve damage to the neck requiring surgery, inability to grip with either hand, chronic lower back pain, cellulitis in the left leg, and hypothyroidism, with an onset date of July 8, 2007.  [ECF No. 10-6, 238, 248].

After his application was denied initially, Caldwell requested a hearing, which took place on April 19, 2013, and included testimony from Caldwell and a vocational expert ("VE").  [ECF No. 10-2, Tr. 28-39].  A supplemental hearing was held on October 8, 2013.  [ECF No. 10-2, Tr. 40-84].  In an April 25, 2014, written decision, the ALJ found Caldwell to be not disabled.  [*Id.*, Tr. 13-22].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Caldwell timely filed for judicial review.  [*Id.*, Tr. 1-6; ECF No. 1].

2

### B.    The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability."  *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the

"inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by

analyzing five sequential steps.  First, if the applicant is "doing substantial

gainful activity," he or she will be found not disabled.  20 C.F.R. §§

404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a

severe impairment or a combination of such impairments[2] for a continuous

period of at least 12 months, no disability will be found.  *Id.*  Third, if the

claimant's severe impairments meet or equal the criteria of an impairment

set forth in the Commissioner's Listing of Impairments, the claimant will be

found disabled.  *Id.*  If the fourth step is reached, the Commissioner

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI
respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's]
physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Caldwell was not disabled. At the first step, he found that the evidence was insufficient to establish that Caldwell had engaged in any substantial gainful activity since his alleged onset date. [ECF No. 10-2, Tr. 15]. At the second step, he found that Caldwell had the severe impairments of "degenerative disc disease, generalized anxiety disorder and a history of substance abuse (in apparent remission)." [*Id.*, Tr. 16]. Next, the ALJ found that Caldwell did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. [*Id.*].

Between steps three and four, the ALJ found that Caldwell had the

RFC to perform light work,[3] except that he "is limited to occasional

overhead reaching bilaterally, must avoid concentrated exposure to

hazards and vibration, and is limited to simple, routine jobs in a low-contact

setting involving no contact with the general public and only occasional

contact with coworkers and supervisors." [*Id.*, Tr. 17].

At step four, the ALJ found that Caldwell could not perform past

relevant work. [*Id.*, Tr. 20-21]. With the assistance of VE testimony, the

ALJ determined at step five that based on Caldwell's age, education, work

experience and RFC, he could perform the positions of mail clerk,

cleaner/housekeeper, bakery worker, addresser, document preparer, and

ampule sealer, for which significant jobs existed in the economy. [*Id.*, Tr.

31-32]. Thus, he found that Caldwell was not disabled.

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." § 1567(b); § 967(b).

and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has

been prejudiced or deprived of substantial rights.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009).  An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless.  *Id.* at 655-56.  On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless.  *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

## III.   ANALYSIS

Caldwell contends that the ALJ violated the treating physician rule and improperly weighed the opinion evidence when finding that Caldwell's mental impairments did not meet or equal the criteria for Listings 12.04 and 12.06, and that the ALJ's RFC and credibility assessment were not supported by substantial evidence.  The Court disagrees, finding that the ALJ's decision was supported by substantial evidence, and recommends affirming the decision.

### A.

Caldwell argues that he should have been found to meet or equal the listings for 12.04 (Affective Disorders) and/or 12.06 (Anxiety Related Disorders) due to his allegedly severe mental limitations.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (effective version from February 26, 2014 to

7

December 8, 2014).  Specifically, he argues that the ALJ failed to properly give controlling weight to the treating physician opinion of Samy Wassef, M.D.  [ECF No. 10-7, Tr. 332-35].

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43.  "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'"  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).

The record only contains two entries from Dr. Wassef: a March 6, 2009 note [ECF No. 10-7, Tr. 351-54] and an "admission history" from March 9, 2009 [*Id.*, Tr. 332-35].  Though Caldwell construes these as treating physician's opinions, Dr. Wassef lacks the longitudinal history or relationship with Caldwell to qualify as a treating physician under the rule.  "[D]epending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment

8

relationship."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506,

n.10 (6th Cir. 2006).  Thus, his opinion is not entitled to controlling weight.

Caldwell also argues that the opinions of Dr. Wassef, as well as that

of Lee J. Suckno, M.D., and Kim Arrington, Psy.D., indicate severe mental

limitations that satisfy the requirements of both listings.  Regarding Dr.

Wassef, the parties dispute whether this opinion was addressed at all by

the ALJ.  In the decision, the ALJ's only mention of Dr. Wassef's notes

appears to be a single reference to Caldwell being "self-employed mostly

as a handyman" (though also referring to him as "jobless" on the same

page).  [ECF No. 10-2, Tr. 18, citing ECF No. 10-7, Tr. 351].  But Dr.

Wassef's opinions are not of assistance to Caldwell.  Caldwell describes

Dr. Wassef's notes as reflecting severely limiting depression and anxiety,

but in the March 6, 2009 entry, Dr. Wassef describes Caldwell's issues as

being mainly situational, and noted that Caldwell had been using cocaine

recently "and may be going through a cocaine crash." [ECF No. 7, Tr. 351].

Dr. Wassef described Caldwell's past psychiatric history as "unremarkable,"

and diagnosed him with cocaine dependence, opiate dependence in

questionable early remission, and substance-induced mood disorder, and

noted a need to "rule out adjustment disorder with severe depression and

resolved suicidal ideation."  [ECF No. 10-7, Tr. 351-53].  The phrase "rule

9

out," in the medical context, "simply means a diagnosis which is possible, but not yet established." *Rizzo v. Colvin*, No. CIV.A. 12-88-DLB, 2013 WL 1345348, at *3 (E.D. Ky. Apr. 1, 2013)

On March 9, Dr. Wassef again evaluated Caldwell, finding that his "symptoms were most likely related to his drug use, and [he] was not offered a psychotropic medication." [*Id.*, Tr. 332]. His diagnoses were mostly the same, except that there was no mention of possible adjustment disorder or severe depression, suggesting that those diagnoses were, in fact, ruled out. [*Id.*, Tr. 334]. Dr. Wassef issued him a global assessment of functioning (GAF) score of 45, [4] but the treatment plan involved only drug treatment, implying that drug addiction was the cause of his limitations in functioning. Given this, any error created by the ALJ's failure to give these opinions further consideration is harmless.

Caldwell also obtained an opinion from Dr. Suckno between the initial and supplemental hearings, and Dr. Suckno found that Caldwell had multiple psychiatric disorders that impair his ability to function, including severe depression and severe problems with anxiety. [ECF No. 10-9, Tr.

---

[4] The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below." *Norris v. Comm'r of Soc. Sec.,* No. 11–5424, 461 F. App'x 433, 436 n. 1 (6th Cir. 2012) (citations omitted).

890].  He noted that Caldwell had only been treated once, in 2009, when he was hospitalized for three days (under the care of Dr. Wassef), and that he denied any psychiatric, psychological, or social work treatment, or psychotropic medication.  [*Id.*, Tr. 889].  He found that Caldwell had cognitive difficulties that were most likely due to anxiety and depression, that his mental impairments would continue unabated were he "clean and sober," and opined that Caldwell is "totally disabled" due to his psychiatric problems.  [*Id.*, Tr. 891].  He also assessed a GAF of 45.  [*Id.*, Tr. 890]. The ALJ found these results unpersuasive because they were contradicted by Caldwell's lack of prior treatment and by the opinions of the consultative examiners.  [ECF No. 10-2, Tr. 18].

In May 2013, Caldwell was examined by consulting psychologist Dr. Arrington.  [ECF No. 10-9, Tr. 906-12].  The ALJ found that, although Dr. Arrington assessed a GAF of 45 and made a disabling medical source statement, those conclusions were contradicted by her own findings.  [ECF No. 10-2, Tr. 18-19].  For instance, she found Caldwell only mildly impaired in understanding and remembering simple judgments and making simple work-related decisions, and only moderately impaired in understanding and remembering complex instructions and making judgments on complex work-related decisions.  [ECF No. 10-9, Tr. 910].  His only marked

11

impairment was in carrying out complex instructions.  [*Id.*].  Caldwell was only mildly impaired in interacting appropriately with the public, with supervisors, and with co-workers, and in responding appropriately to usual work situations and to changes in a routine work setting.  [*Id.*, Tr. 910-11].  These findings were in accord with the ALJ's assessment of mild restriction in activities of daily living (ADLs) and moderate difficulties in social functioning and concentration, persistence or pace (CPP).  [ECF No. 10-2, Tr. 16].

The ALJ afforded the greatest weight to the consultant examination of John D. Jeter, M.A., who examined Caldwell in October 2011 under the supervision of Hugh Bray, Ph.D.  [ECF No. 10-2, Tr. 19, citing ECF No. 10-7, Tr. 588-92].  Jeter and Dr. Bray found Caldwell to have a good quality and fair frequency of ADLs; that his thoughts were logical, organized, simple, and concrete; that his mood was mildly depressed; that he demonstrated a poor confidence level in his abilities; and that there were no unusual findings in his mental trend and thought content.  [ECF No. 10-7, Tr. 589-90].  They found that his condition was treatable, that he had no impairment in understanding simple directions or making judgments with simple work-related decisions, and that his motivation was low.  [*Id.*, Tr. 591].  He was diagnosed with an unspecified learning disability,

12

depression, and a history of polysubstance abuse in remission, and assessed a GAF score of 60.  [*Id.*, Tr. 592].

Within his listings argument, Caldwell takes issue with the ALJ giving greater weight to the opinion of Jeter and Dr. Bray than those of Dr. Suckno and Dr. Arrington.  Caldwell correctly notes that Jeter is not an "acceptable medical source" under the regulations, but Dr. Bray is and he also signed the opinion at issue.  20 C.F.R. § 404.1513(a) & (d).  Besides, an ALJ is entitled to consider evidence from "other sources" like Jeter to assess the severity of Cardwell's impairments.  § 1513(d).  Further, the ALJ's assessment of Caldwell's RFC limiting him to "simple, routine jobs" with "no contact with the general public and only occasional contact with coworkers and supervisors" is also in line with Dr. Arrington's opinion.  [ECF No. 10-2, Tr. 17; ECF No. 10-9, Tr. 910-11].

The ALJ's decision to discount Dr. Suckno's opinion was also supported by substantial evidence, as it conflicted with opinion evidence from other sources, and because of Caldwell's lack of treatment and medication for his allegedly debilitating mental impairments.  *White v. Comm'r of Soc. Sec.,* 572 F.3d 272, 283–84 (6th Cir. 2009) (a reasonable mind could find that lack of treatment over a period of time indicated an alleviation of symptoms).

Other than stating that the ALJ should have found his mental impairments to be more severe, Caldwell does not develop his argument that his impairments meet or medically equal Listings 12.04 or 12.06, and he bears that burden. *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (claimant bears burden of demonstrating that impairments met or equal a listing). He does not attempt to demonstrate that the ALJ's analysis of the "paragraph B" criteria was erroneous. [ECF No. 10-2, Tr. 16]. The medical equivalency issue is thus waived. *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." (citation and internal quotation marks omitted)).

**B.**

Caldwell also argues that the ALJ failed to incorporate his moderate deficiencies in CPP into the RFC. He reasons that the RFC's requirements of "simple, routine" work do not fully incorporate such moderate deficiencies, in light of his severe mental impairments. There are actually inconsistent holdings among the reviewing courts on this issue, so ALJs

14

have been urged to explain their reasoning in detail. *Southworth v. Comm'r of Soc. Sec.*, No. 12–12243, 2013 WL 3388946, at *16 (E.D. Mich. July 8, 2013) (collecting cases). In this case, the ALJ explained at the end of his step-three analysis that the limitations in the "paragraph B" criteria (including the moderate CPP finding) were not a RFC assessment, but are instead used to rate the severity of mental impairments at steps two and three of the sequential evaluation process. [ECF No. 10-2, Tr. 16]. He then noted that his RFC incorporated his assessment of Caldwell's mental function. [*Id.*]. In *Southworth*, the court found that the same language the ALJ used here meant that the ALJ believed his moderate CPP rating was fully accounted for by the limitations in his RFC assessment. *See Southworth*, 2013 WL 3388946, at *15–17. Therefore, the Court's review narrows to whether substantial evidence supports the ALJ's belief that, despite his moderate difficulties in CPP, Caldwell could perform simple, routine work on a sustained basis. *See id.*

As discussed above, the ALJ relied upon opinion evidence from Jeter and Dr. Bray that Caldwell had no impairment in understanding simple directions or making judgments involving simple work-related decisions. [ECF No. 10-7, Tr. 591]. He was also supported by Dr. Arrington's findings that Caldwell was only mildly impaired in understanding and remembering

15

simple judgments and making simple work-related decisions.  [ECF No. 10-9, Tr. 910].  The only record evidence Caldwell cites to refute this aspect of the RFC are his GAF scores of 30 and 45 by various treating sources. [ECF No. 10-7, Tr. 334, 354; ECF No. 10-9, Tr. 890, 908].  But the Sixth Circuit has emphasized that no "statutory, regulatory, or other authority require[s] the ALJ to put stock in a GAF score in the first place." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir.2006). A GAF "is not to be construed as a longitudinal picture of an individual's overall mental functioning." *Stokes v. Comm'r of Soc. Sec.,* No. 1:13–CV–487, 2015 WL 803087, at *15 (W.D.Mich. Feb. 25, 2015).  In fact, "[t]he latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) no longer includes the GAF scale." *Davis v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV01556, 2014 WL 4182737, at *8 (N.D. Ohio Aug. 21, 2014). Without more, Caldwell cannot show that the RFC is unsupported by the record.

## C.

Lastly, Caldwell disputes the ALJ's assessment of his credibility. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  At the same time, "such determinations

16

must find support in the record." *Rogers*, 486 F.3d at 241.  Here, the Court finds that there is no compelling reason to disturb the ALJ's credibility determination.

The ALJ found that Caldwell's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  [ECF No. 10-2, Tr. 20].  The ALJ noted that the record contained references to Caldwell working as a self-employed handyman in 2009, and that he had moved a refrigerator and stove in 2012.  [ECF No. 10-2, Tr. 18, citing No. 10-7, Tr. 351; ECF No. 10-8, Tr. 694].  The ALJ also noted an entry from September 2008 that referenced Caldwell working all day in his garage and yard and having a physical Monday through Friday job involving lifting, pushing, and pulling heavy parts.  [*Id.*, citing ECF No. 10-7, Tr. 337].  When questioned about these activities, Caldwell denied that any of them were at all possible.  [ECF No. 10-2, Tr. 18, referring to Tr. 49-52].  The ALJ found Caldwell's responses at odds with the record and not fully credible.  [ECF No. 10-2, Tr. 18].

The ALJ also noted that Caldwell had slowed motor activity and was using a cane at his examination with Jeter and Dr. Bray, but that two weeks

17

later he was ambulating without assistance and driving.  [*Id.*, citing ECF No. 10-7, Tr. 588-92; ECF No. 10-8, Tr. 594-601].  He gave some weight to the consultative examination of Justin Fernando, M.D., who found that Caldwell could ambulate without difficulty, perform a full squat, and exhibited no lower extremity limitations.  [*Id.*, Tr. 19, citing ECF No. 10-9, Tr. 914].  He discounted Dr. Fernando's opinion to the extent that it implied an ability to perform more than light work, but noted that it was the only medical opinion of record on Caldwell's physical impairments.  [ECF No. 10-2, Tr. 19-20].

Caldwell contends that the ALJ's analysis of his inconsistent testimony and lack of medical evidence do not "hold up under proper examination," but he does not explain how the ALJ's analysis is lacking. [ECF No. 14, PageID 1062-63].  He accurately notes that his diagnoses of spinal stenosis and degenerative disc disease are well-supported by the record, but a mere diagnosis says nothing about its disabling effects. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (diagnosis of arthritis without doctors reports documenting "any limitation of joint motion, as well as the intensity, frequency, and duration of arthritic pain," was insufficient to establish severe impairment).

The ALJ's "opportunity to observe the demeanor of a witness, evaluating what is said in the light of how it is said, and considering how it

18

fits with the rest of the evidence gathered before the person who is

conducting the hearing, is invaluable, and should not be discarded

lightly." *Keeton v. Comm'r of Soc. Sec.,* 583 F. App'x 515, 531 (6th Cir.

2014). Caldwell has presented no compelling reason to disturb the ALJ's

credibility determination.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the

Commissioner's motion [ECF No. 17] be **GRANTED**; that Caldwell's motion

[ECF No. 14] be **DENIED**; and the Commissioner's decision be **AFFIRMED**

pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: February 10, 2017

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

20

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 10, 2017.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager